**E-Filed 6/14/05**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADVANTACARE HEALTH PARTNERS, LP, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>ACCESS IV, INC., a California Corporation, et al.,<br><br>　　　　　　　Defendants. | Case Number C-03-4496-JF (HRL)<br><br>ORDER DENYING DEFENDANT PORTER'S MOTION FOR RECONSIDERATION |

Defendant Gwen Porter seeks reconsideration of the Court's Order of March 17, 2005, imposing default judgment against her and the other defendants in this case. The Court has considered the moving and opposing papers. For the reasons discussed below, the motion will be denied.[1]

## I. BACKGROUND

---

[1] The Court's Order of April 29, 2005 ("April 29 Order"), setting a briefing schedule on the motion for reconsideration, stated that the motion would be taken under submission without oral argument. Due to a clerical error, the motion was listed on the Court's law and motion hearing calendar for June 10, 2005. There were no appearances.

Plaintiffs AdvantaCare Health Partners, LP and Healthcare Pathways Management, Inc. (collectively "AdvantaCare") are in the business of providing in-home intravenous services in Monterey, Santa Cruz, San Benito and Santa Clara Counties. AdvantaCare obtains customers through referrals from hospital discharge planners, home health agencies and doctors.

Two of AdvantaCare's key employees, Gwen Porter ("Porter") and Gary Dangerfield ("Dangerfield"), resigned in August 2003 but continued working at AdvantaCare until early September 2003. Porter and Dangerfield then began a new business, Access IV, Inc. ("Access IV"), that competes directly with AdvantaCare. AdvantaCare discovered that Dangerfield had copied numerous computer files prior to leaving AdvantaCare, and that he had tried to conceal his copying activities by deleting copied files from his hard drive.

AdvantaCare filed the instant action on October 6, 2003, alleging claims for relief against Porter, Dangerfield and Access IV for: (1) violation of the Federal Computer Fraud And Abuse Act; (2) violation of California Penal Code § 502; (3) breach of contract; (4) breach of fiduciary duty and duty of loyalty; (5) interference with prospective economic advantage; (6) violation of the Uniform Trade Secrets Act; (7) violation of California's Unfair Competition Law; and (8) conversion. AdvantaCare also moved for a temporary restraining order ("TRO") and a preliminary injunction. The Court granted the application for TRO on October 6, 2003 and granted the motion for preliminary injunction in part later the same month.

On August 17, 2004, the Court issued an order ("August 17 Order") imposing $20,000 in monetary sanctions against Defendants. The Court also imposed evidence sanctions, directing the trier of fact to find that Defendants copied all of the files on AdvantaCare's computers. The Court's imposition of these significant sanctions was based upon its factual determination that immediately after service of the TRO, Dangerfield deleted thousands of files from his home and office computers in an attempt to destroy evidence that Defendants were in possession of AdvantaCare's proprietary and confidential information. August 17 Order at 3. The Court also found that Defendants failed to comply with the preliminary injunction, which required them to return all material owned by AdvantaCare. *Id*. at 4. The parties thereafter agreed that Defendants would delete all of AdvantaCare's data from its computers and that AdvantaCare

would image Defendants' hard drives to ensure compliance. *Id*. However, when AdvantaCare imaged the hard drives, it discovered thousands of files containing its confidential, proprietary information. *Id*.

The Court found Defendants' conduct to be egregious, willful and in bad faith. August 17 Order at 8-9. The Court expressly considered imposing terminating sanctions, but after careful consideration concluded that significant monetary and evidence sanctions should be sufficient to deter future misconduct by Defendants and to remedy most of the harm Defendants' conduct had caused to AdvantaCare. Significantly for present purposes, the Court ordered Defendants to demonstrate affirmative compliance with the preliminary injunction by demonstrating that all files containing AdvantaCare's proprietary information had been deleted. *Id*. at 13. It further directed the parties to meet and confer to determine which files remained to be deleted. *Id*. The Court further directed that within a reasonable time thereafter, AdvantaCare was to examine Defendants' hard drives to confirm that all files containing AdvantaCare's proprietary information had been deleted. *Id*. The Court expressly warned that "Defendants' failure to delete the files will result in default judgment against Defendants." *Id*.

On September 30, 2004, the Court approved the parties' stipulation regarding the manner in which Defendants would demonstrate compliance with the preliminary injunction and August 17 Order. The stipulation and order provided that: (1) Access IV would copy all files on its computers to eleven compact disks; (2) Access IV would remove the hard drives from its six existing computers and send them to its counsel, Gregory J. Charles, Esq. ("Charles"), to hold throughout the proceedings; (3) Charles would retain a seventh hard drive previously removed from Dangerfield's home computer; (4) Access IV would replace the six hard drives that had been removed with new hard drives; (5) Access IV would load the data from the eleven compact disks onto a new file server; (6) Access IV's computers and hard drives and the eleven compact disks would be made available for inspection by AdvantaCare's forensic expert; (7) Charles would maintain in a secure room the original seven hard drives, and neither the hard drives nor their contents would be released absent a stipulation between the parties or by court order; and (8) at the conclusion of the case, the seven hard drives would be destroyed.

On March 17, 2005, the Court issued an order ("March 17 Order") striking Defendants' answer and entering default judgment against them. The Court's decision to enter terminating sanctions was based upon its factual determination that while AdvantaCare's previous motion for sanctions was under submission, Defendants returned two hard drives to the leasing company, and those hard drives were wiped clean, and that even after the Court issued its August 17 Order imposing monetary and evidence sanctions, numerous files were deleted from Access IV's new servers and from Dangerfield's new hard drive, and several compact disks were burned on Dangerfield's hard drive. March 17 Order at 10. In addition to Defendants' continued destruction of evidence, Defendants failed to remove all of AdvantaCare's proprietary materials from their computers. A number of AdvantaCare files were loaded onto Defendants' computers after September 1, 2004, apparently from alternative data sources not provided to AdvantaCare. *Id*. at 11. Defendants offered various explanations for the presence of AdvantaCare material on their computers, to which the Court responded as follows:

> However, despite their attempts to explain their most recent conduct, Defendants do not deny possessing AdvantaCare files long after such possession could be explained legitimately. Defendants have known for months that in light of their past behavior, any possession of AdvantaCare files would be deemed a material violation of the Court's orders. Nor is there any indication that Access IV has returned any of the hard copies of AdvantaCare documents that may be in its possession. Particularly in view of the fact that they were warned specifically that any further misconduct would result in terminating sanctions, Defendants' conduct is inexcusable.

March 17 Order at 12.

## II. DISCUSSION

In order to obtain reconsideration of the March 17 Order, Porter must demonstrate:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civ. L. R. 7-9(b). Porter does not argue that new or different facts or law warrant reconsideration

under (1) or (2) above; rather, she appears to be arguing that the Court failed to consider material facts when the Court imposed terminating sanctions against her.

Specifically, Porter argues that the Court should not have entered default judgment against her because the Court has never made any findings that she personally engaged in any of the copying or destruction of files described in the Court's orders. While Porter is correct that the Court's orders have focused largely upon the affirmative misconduct of Dangerfield, the March 17 Order explicitly placed upon *all* Defendants an affirmative obligation to remove AdvantaCare materials from their computers and warned that *all* Defendants would be defaulted absent compliance. Porter apparently left compliance in Dangerfield's hands. The fact that Porter reposed trust in Dangerfield does not insulate her from the affirmative obligations placed upon *all* Defendants in the March 17 Order, especially in light of the Court's repeated findings that Dangerfield has engaged in misconduct with respect to AdvantaCare's files throughout this litigation.

Moreover, Porter's attempts to distance herself from Dangerfield at this point in the proceedings - *after* terminating sanctions have been imposed - lack credibility. This is the first time Porter has suggested that she did not authorize or acquiesce in Dangerfield's conduct. Porter has had numerous opportunities to distinguish her conduct from Dangerfield's, and she could have done so in any number of ways, including filing an affidavit disavowing any knowledge of Dangerfield's misconduct and detailing what efforts, if any, she personally undertook to comply with the preliminary injunction and August 17 Order. She never did so.

Accordingly, Porter's motion for reconsideration will be denied and default judgment will be entered against all Defendants.

//

//

//

Case No. C- 03-4496-JF (HRL)
ORDER DENYING MOTION FOR RECONSIDERATION
(JFLC2)

## III. ORDER

(1) Porter's motion for reconsideration is DENIED; and

(2) Default judgment shall be entered against all Defendants.

DATED: June 14, 2005

/s/ electronic signature authorized
JEREMY FOGEL
United States District Judge

Copies of this Order served upon:

Gail Melissa Blanchard-Saiger    invalidaddress@myrealbox.com, wdelvalle@foley.com

Gregory J. Charles    gjc@svlg.com, mwo@svlg.com;keb@svlg.com

Kimberly K. Dodd    kdodd@foley.com, llow@foley.com

Nancy J. Geenen    ngeenen@foleylaw.com, rbarcena@foleylaw.com

Kalpana V. Peddibhotla    kvp@svlg.com,

Case No. C- 03-4496-JF (HRL)
ORDER DENYING MOTION FOR RECONSIDERATION
(JFLC2)