1

2    **E-Filed 3/1/06**

3

4

5

6

7    NOT FOR CITATION

8    **IN THE UNITED STATES DISTRICT COURT**

9    **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10   **SAN JOSE DIVISION**

11

12   ADVANTACARE HEALTH PARTNERS, LP, et al.,                    Case Number C 03-04496 JF (HRL)

13                                                              ORDER AWARDING DAMAGES
                         Plaintiffs,                            AND PERMANENT INJUNCTIVE
14                                                              RELIEF FOLLOWING DEFAULT
                  v.                                            JUDGMENT
15
     ACCESS IV, INC., a Califomia Corporation, et al.,
16
                         Defendants.
17

18

19          On March 17, 2005, the Court ordered that Defendants' answer be stricken and that

20   default judgment be entered in favor of Plaintiffs.  On June 14, 2005, the Court denied Defendant

21   Porter's motion for reconsideration and entered default judgment.  On July 22, 2005, the Court

22   heard argument with respect to the appropriate relief to award under the default judgment

23   pursuant to Federal Rule of Civil Procedure 55(b)(2).  *See Henry v. Sneiders*, 490 F.2d 315, 318

24   (9th Cir. 1974) (holding that Rule 55(b)(2) "authorizes a district court to hold an evidentiary

25   hearing following a default judgment to determine damages").

26          Plaintiffs' operative first amended complaint ("FAC") alleges nine claims:  (1) violation

27   of the federal Computer Fraud and Abuse Act (Dangerfield and Access IV); (2) violation of Cal.

28   Pen. Code § 502 (Dangerfield and Access IV); breach of contract (Dangerfield and Porter); (4)

1   breach of fiduciary duty and duty of loyalty (Dangerfield); (5) interference with prospective

2   economic advantage (all defendants); (6) violation of the Uniform Trade Secrets Act (all

3   defendants); (7) violation of California's Unfair Competition Law (all defendants); (8)

4   conversion (all defendants); and (9) defamation (all defendants).  The FAC does not allege

5   damages in a sum certain, but as to every claim except for the seventh claim for unfair

6   competition requests damages in an "amount to be determined according to proof at trial."  As to

7   the seventh claim for unfair competition, the FAC requests restitution of monies Defendants

8   obtained from their unfair business practices and a permanent injunction to prevent further acts

9   of unfair competition.  These various claims provide for compensatory damages, unjust

10  enrichment, attorneys' fees, punitive damages and permanent injunctive relief.  Plaintiffs request

11  each of these remedies and costs of suit.  Specifically, Plaintiffs request the following:

12  
13  | compensatory damages: | $913,961.61 |
    | punitive damages: | $2,741,884.80 |
    | attorneys' fees: | $305,071.50 |
    | costs: | $5,343.00 |

14  

15  Plaintiffs also request a permanent injunction enjoining Defendants from engaging in the home

16  infusion business in Monterey, Santa Cruz, San Benito and Santa Clara Counties for two years,

17  requiring Defendants to transfer to Plaintiffs all their current patients and suspending

18  Defendants' credentials for two years.  Finally, Plaintiffs request exoneration of the bonds they

19  posted in connection with the TRO and preliminary injunction previously issued by the Court.

20  **A.   Application Of Rule 54(c)**

21          Defendants argue that a plaintiff who obtains a default judgment is limited to recovery of

22  those specific damages that are alleged in the complaint in an amount certain.  Because Plaintiffs

23  do not allege damages in an amount certain, but generally allege damages in an amount to be

24  proved at trial, Defendants argue that Plaintiffs cannot recover *any* damages based upon the

25  default judgment with the exception of the $25,000 that specifically was alleged to have been

26  incurred by Plaintiffs as a result of Defendant Dangerfield's unauthorized use of Plaintiffs'

27  computers.  With respect to Plaintiffs' first claim for violation of the federal Computer Fraud and

28  Abuse Act, Defendants base their arguments on Federal Rule of Civil Procedure 54(c).  With

2

1   respect to Plaintiffs' remaining state law claims, Defendants base their arguments on state law.

2       The Court concludes that Rule 54(c) applies to all the claims, federal and state, and that

3   Defendants have misread the rule.  Rule 54(c) provides in relevant part as follows:  "[a]

4   judgment by default shall not be different in kind from or exceed in amount that prayed for in the

5   demand for judgment."  Defendants argue that this language must be construed to preclude *all*

6   damages when the complaint does not allege damages in an amount certain.  However,

7   Defendants cite no authority for this construction.  The Ninth Circuit explicitly has held that a

8   Plaintiff may recover damages on a default judgment even if the specific amount of damages is

9   not alleged in the complaint.  *Henry*, 490 F.2d at 317.  In *Henry*, the plaintiff obtained a default

10  judgment against the defendant as a discovery sanction.  The complaint alleged damages in

11  excess of $70,000 and additional amounts to be proved at trial.  The district court entered default

12  judgment in excess of $235,000.  On appeal, the Ninth Circuit rejected the defendant's argument

13  that the award should have been limited to the $70,000 specifically alleged in the complaint.

14  Accordingly, so long as the FAC alleges a category of damages, those damages are recoverable

15  even if the FAC does not set forth a specific amount of damages.

16      Defendants argue that even if Rule 54(c) is construed in this manner, the Court should

17  apply California law to Plaintiffs' state law claims.  Under California law a plaintiff's recovery

18  under a default judgment is limited to the specific amount of damages alleged in the complaint.

19  *Greenup v. Rodman*, 42 Cal.3d 822, 824 (1986).  There does not appear to be any authority as to

20  whether this conflict between state law and Rule 54(c) is a matter of procedure or substantive law

21  in the default context.  However, several circuits have addressed the issue outside of the default

22  context, and concluded that the conflict involves procedure rather than substantive law, and

23  therefore that Rule 54(c) controls.  *See, e.g., Menne v. Celotex Corp.*, 861 F.2d 1453, 1474 (10th

24  Cir. 1988) (applying Rule 54(c) in concluding trial judge erred in instructing jury that potential

25  damages were limited to specific amount set forth in complaint); *Troutman v. Modlin*, 353 F.2d

26  382, 383 (8th Cir. 1965) (holding that under Rule 54(c) damages could be awarded in excess of

27  the prayer despite contrary state law); *Riggs, Ferris & Gerr*, 316 F.2d 60, 62 (2d Cir. 1963)

28

3

1   (same).[1]

2   **B.   Compensatory Damages**

3          Plaintiffs request compensatory damages in the amount of $913,961.61.  This amount

4   represents $783,009 in lost profits and $130,952.61 in costs of forensic investigation.  The Court

5   concludes that the amount expended on forensic investigation is reasonable and is recoverable as

6   compensatory damages.  With respect to lost profits, Plaintiffs submit evidence that their

7   referrals went down dramatically when Defendants entered the market in September 2003 and

8   when Defendants sent the allegedly defamatory letter in November 2003.  Defendants argue that

9   Plaintiffs lost business for any number of reasons, and not necessarily due to Defendants'

10  unlawful conduct.[2]  After considering the record as a whole, the Court concludes that while the

11  evidence does support a significant damages award, the evidence does not support an award of

12  almost $800,000 in lost profits over two years.  The Court will award $400,000 in lost profits,

13  which results in a total compensatory damages award of $530,952.61.

14  **C.   Punitive Damages**

15         Plaintiffs request $2,741,884.80 in punitive damages.  Defendants argue that much of

16  their alleged wrongful conduct constituted violations of their employment contracts, and that

17  punitive damages are not available for contract claims.  Defendants also argue that in essence

18  Plaintiffs are seeking to sanction Defendants for competing, and that such sanctions are

19  inappropriate.  Punitive damages are available with respect to Plaintiffs' trade secrets claim upon

20  a showing of willful and malicious misappropriation, Cal. Civ. Code § 3426.3(c), and with

21

22  ――――――――――――――

23         [1] Defendants cite a bankruptcy decision from this district in support of their position, *In
    re Moore*, 186 B.R. 962 (N.D. Cal. 1995).  However, the *Moore* decision involved the collateral

24  estoppel effect of a state court default judgment.  The decision noted in passing that the state
    court appeared to have erred in awarding punitive damages when such damages had not been

25  sought or pled.  *Id.* at 973 n.16.  The decision does *not* support Defendants' contention that the
    limitation imposed by a plaintiff's allegations of damages in an amount certain, or lack of such

26  allegations, is a substantive rather than procedural limitation.

27         [2] Defendants also argue that the litigation privilege applies to the letter; however, because

28  Defendants have been defaulted, they are not entitled to raise the litigation privilege or any other
    defense to Plaintiffs' claims.

Case No. C 03-04496 JF (HRL)
ORDER AWARDING DAMAGES AND PERMANENT INJUNCTIVE RELIEF ETC.
(JFLC2)

1  respect to Plaintiffs' other state law tort claims upon a showing of oppression, fraud or malice,

2  Cal. Civ. Code § 3294(a).  The Court previously has found Defendants' conduct to be willful and

3  in bad faith, and has no difficulty concluding that Defendants' conduct meets the standards for

4  imposition of punitive damages.  However, the Court also concludes that an award in the amount

5  requested by Plaintiffs would be inappropriate on this record.

6      "The purpose of punitive damages is a public one – to punish wrongdoing and deter

7  future misconduct by either the defendant or other potential wrongdoers." *Bardis v. Oates*, 119

8  Cal.App.4th 1, 25 (2004) (internal quotation marks and citation omitted).  A trial court

9  considering the imposition of punitive damages must determine whether the amount of the award

10  substantially serves the public interest in punishment and deterrence. *Id.*  In making that

11  determination, the court should consider the following factors:  (1) the reprehensibility of the

12  defendant's conduct; (2) the amount of compensatory damages (although there is no fixed ratio

13  for determining whether punitive damages are reasonable in relation to actual damages); and (3)

14  the defendant's financial condition. *Id.*

15      While Defendants acted reprehensibly in utilizing Plaintiffs' trade secrets to start a

16  competing business and attempting to hide their conduct by, among other things, violating this

17  Court's orders, this Court already has punished Defendants significantly by striking their answer

18  and entering default judgment.  Moreover, the amount of punitive damages requested is more

19  than five times the amount of compensatory damages the Court has determined to be appropriate.

20  Finally, Defendant Access IV began operating only a short time before the lawsuit was filed, and

21  Defendants Dangerfield and Porter are individuals.  Under these circumstances, the Court

22  concludes that an award of $100,000 in punitive damages is appropriate.

23  **D.    Attorneys' Fees**

24      Plaintiffs request $305,071.50 in attorneys' fees, which represents the total amount of

25  fees incurred ($325,071.50) less $20,000 previously awarded as a sanction.  Attorneys' fees are

26  available with respect to Plaintiffs' trade secrets claim upon a showing of willful and malicious

27  misappropriation, Cal. Civ. Code § 3426.4,  and with respect to Plaintiffs' claim under Cal. Pen.

28  Code § 502.  It is unclear from the record before the Court what portion of Plaintiffs' attorneys'

5

1   fees were incurred in prosecuting the trade secrets claim and the § 502 claims.  However, those

2   two claims were core to Plaintiffs' action, and there likely would have been at least some overlap

3   between the discovery and motion practice necessary to prosecute those claims and Plaintiffs'

4   other claims.  Accordingly, the Court will award $150,000 in attorneys' fees, which is

5   approximately half the amount of fees incurred in litigating the action.  To the extent that

6   Defendants dispute the fees on the ground that this was a "garden-variety Silicon Valley

7   employment case," the Court is unpersuaded.  Defendants' own persistent violation of this

8   Court's orders and their legal duties drove Plaintiffs' fees up; Defendants cannot now be heard to

9   complaint that those fees are too high.

10  **E.   Costs**

11          Plaintiffs seek costs in the amount of $5,343.00.  Plaintiffs are entitled to costs of suit as

12  the prevailing parties.  Defendants argue that Plaintiffs are not prevailing parties because they are

13  not entitled to a monetary recovery as a result of their failure to plead a sum certain in their FAC.

14  This argument fails for the reasons discussed under part A above.

15  **F.   Injunctive Relief**

16          Plaintiffs request a permanent injunction enjoining Defendants from engaging in the

17  home infusion business in Monterey, Santa Cruz, San Benito and Santa Clara Counties for two

18  years, requiring Defendants to transfer to Plaintiffs all their current patients and suspending

19  Defendants' credentials for two years.  Defendants correctly point out that the injunctive relief

20  Plaintiffs currently request is completely different from the injunctive relief requested in the

21  FAC, which focuses on return of Plaintiffs' documents and similar relief.  The Court concludes

22  that the relief Plaintiffs currently are requesting is different in kind from that requested in the

23  FAC.  Even if it were within the Court's power to award such relief, the Court would decline to

24  do so based upon this record.  The Court therefore will grant as permanent injunctive relief the

25  relief previously granted preliminarily, but otherwise will deny Plaintiffs' request for permanent

26  injunctive relief.

27  **G.   Bond**

28          The Court will exonerate Plaintiffs' bonds in connection with the Court's prior issuance

6

1  of preliminary injunctive relief.

2  **ORDER**

3  IT IS HEREBY ORDERED that, pursuant to the default judgment entered on June 14,

4  2005, Plaintiffs are awarded the following relief:

5      (1)    compensatory damages in the amount of $530,952.61;

6      (2)    punitive damages in the amount of $100,000;

7      (3)    attorneys' fees in the amount of $150,000;

8      (4)    costs in the amount of $5,343;

9      (5)    permanent injunctive relief identical to that relief previously specified as

10      preliminary injunctive relief; and

11      (6)    exoneration of the bonds posted in connection with the Court's prior preliminary

12      injunctive relief.

16  DATED:  March 1, 2006

18  JEREMY FOGEL
United States District Judge

7

1   Copies of this Order served upon:

2

3   Gail Melissa Blanchard-Saiger      invalidaddress@myrealbox.com, wdelvalle@foley.com

4

5   Gregory J. Charles      gjc@svlg.com, jpr@svlg.com; llc@svlg.com; al@svlg.com

6

7   Kimberly K. Dodd      kdodd@foley.com, llow@foley.com

8   Nancy J. Geenen      ngeenen@ foleylaw.com, rbarcena@foleylaw.com

9

10   Kalpana V. Peddibhotla      kvp@svlg.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 03-04496 JF (HRL)
ORDER AWARDING DAMAGES AND PERMANENT INJUNCTIVE RELIEF ETC.
(JFLC2)